1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   RICHARD BURTON,                          Case No. 2:25-cv-00031-CSK

12              Plaintiff,                     ORDER ON PARTIES' CROSS MOTIONS
                                               FOR SUMMARY JUDGMENT
13        v.
                                               (ECF Nos. 10, 12)
14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16

17        Plaintiff Richard Burton seeks judicial review of a final decision by Defendant

18   Commissioner of Social Security denying an application for a period of disability and

19   disability insurance benefits.[1] In the summary judgment motion, Plaintiff contends the

20   final decision of the Commissioner contains legal error and is not supported by

21   substantial evidence. Plaintiff seeks a remand for further proceedings. The

22   Commissioner opposes Plaintiff's motion, filed a cross-motion for summary judgment,

23   and seeks affirmance.

24        For the reasons below, Plaintiff's motion is GRANTED, the Commissioner's cross-

25   motion is DENIED, and the final decision of the Commissioner is REVERSED AND

26   REMANDED.

27   _____

28   [1]  This action was referred to the magistrate judge under Local Rule 302(c)(15) and
     proceeds on the consent of all parties. (ECF Nos. 3, 4, 8.)

                                            1

1    **I.    SOCIAL SECURITY CASES:  FRAMEWORK & FIVE-STEP ANALYSIS**

2            The Social Security Act provides benefits for qualifying individuals unable to

3    "engage in any substantial gainful activity by reason of any medically determinable

4    physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(a). When an individual (the

5    "claimant") seeks Social Security disability benefits, the process for administratively

6    reviewing the request can consist of several stages, including: (1) an initial determination

7    by the Social Security Administration; (2) reconsideration; (3) a hearing before an

8    Administrative Law Judge ("ALJ"); and (4) review of the ALJ's determination by the

9    Social Security Appeals Council. 20 C.F.R. § 404.900(a).

10            At the hearing stage, the ALJ is to hear testimony from the claimant and other

11    witnesses, accept into evidence relevant documents, and issue a written decision based

12    on a preponderance of the evidence in the record. 20 C.F.R. § 404.929. In evaluating a

13    claimant's eligibility, the ALJ is to apply the following five-step analysis:

14    **Step One**: Is the claimant engaged in substantial gainful activity? If yes,
       the claimant is not disabled. If no, proceed to step two.

15    **Step Two**: Does the claimant have a "severe" impairment? If no, the
16    claimant is not disabled. If yes, proceed to step three.

17    **Step Three**: Does the claimant's combination of impairments meet or
       equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (the "Listings")?
18    If yes, the claimant is disabled. If no, proceed to step four.

       **Step Four**: Is the claimant capable of performing past relevant work? If
19    yes, the claimant is not disabled. If no, proceed to step five.

20    **Step Five**: Does the claimant have the residual functional capacity to
       perform any other work? If yes, the claimant is not disabled. If no, the
21    claimant is disabled.

22    *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995); 20 C.F.R. § 404.1520(a)(4). The

23    burden of proof rests with the claimant through step four, and with the Commissioner at

24    step five. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). If the ALJ finds a claimant

25    not disabled, and the Social Security Appeals Council declines review, the ALJ's

26    decision becomes the final decision of the Commissioner. *Brewes v. Comm'r.*, 682 F.3d

27    1157, 1161-62 (9th Cir. 2012) (noting the Appeals Council's denial of review is a non-

28    final agency action). At that point, the claimant may seek judicial review of the

Commissioner's final decision by a federal district court. 42 U.S.C. § 405(g).

The district court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner. *Id.* ("Sentence Four" of § 405(g)). In seeking judicial review, the plaintiff is responsible for raising points of error, and the Ninth Circuit has repeatedly admonished that the court cannot manufacture arguments for the plaintiff. *See Mata v. Colvin*, 2014 WL 5472784, at *4 (E.D. Cal, Oct. 28, 2014) (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (stating that the court should "review only issues which are argued specifically and distinctly," and noting a party who fails to raise and explain a claim of error waives it).

A district court may reverse the Commissioner's denial of benefits only if the ALJ's decision contains legal error or is unsupported by substantial evidence. *Ford*, 950 F.3d. at 1154. Substantial evidence is "more than a mere scintilla" but "less than a preponderance," i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). The court reviews evidence in the record that both supports and detracts from the ALJ's conclusion, but may not affirm on a ground upon which the ALJ did not rely. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The ALJ is responsible for resolving issues of credibility, conflicts in testimony, and ambiguities in the record. *Ford*, 950 F.3d at 1154. The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation, or where any error is harmless. *Id.*

## II.    FACTUAL BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS

On October 25, 2021, Plaintiff applied for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging he has been disabled since April 14, 2020. Administrative Transcript ("AT") 179-82, 72 (available at ECF No. 9). Plaintiff claimed disability due to left shoulder pain, back spasms and pain, left hand cramps, low back pain, headaches, and left hip pain. *See* AT 72. Plaintiff's applications were denied initially and upon reconsideration; he sought review before an ALJ. AT 85-86, 87, 103-05, 105, 130-31. Plaintiff appeared with a representative at a January 19,

2024 hearing before an ALJ, where Plaintiff testified about his impairments and a vocational expert testified about hypothetical available jobs in the national economy. AT 34-70.

On February 8, 2024, the ALJ issued a decision finding Plaintiff was not disabled. AT 17-28. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 14, 2020. AT 19. At step two, the ALJ determined Plaintiff had the following severe impairments:  lumbar disc disease, degenerative joint disease of the bilateral hips, hypertension, obesity, and anxiety disorder. AT 20. At step three, the ALJ found Plaintiff's combination of impairments did not meet or medically equal any Listing. *Id.* (citing 20 C.F.R Part 404, Subpart P, Appendix 1). Relevant here, the ALJ considered Listings 1.15 (disorders of the skeletal spine) and 1.18 (abnormality of a major joint(s)) for Plaintiff's physical impairments, and Listing 12.06 (anxiety) for Plaintiff's mental impairments, examining the "Paragraph B" criteria for the mental impairments.[2] AT 20-21. The ALJ noted that hypertension does not have a specific listing, and considered cardiovascular systems in Listing 4.00. AT 21. The ALJ also noted that obesity does not have a specific listing, and considered the impairment in accordance with SSR 19-2p. *Id.* The ALJ found Plaintiff moderately limited in concentrating, persisting or maintaining pace; mildly limited in understanding, remembering or applying information and adapting or managing oneself; and not limited in interacting with others. AT 21-22.

The ALJ then found Plaintiff had the residual functional capacity to perform light work (20 C.F.R. §§ 404.1567(b)), except as follows:

> The claimant is precluded from climbing all ladders, ropes, and scaffolds, and all exposure to dangerous work hazards including moving machinery and unprotected heights. The

---

[2]  "Paragraph B" lists four categories for evaluating how a claimant's mental disorders limit their functioning:  understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. To be found disabled under the Paragraph B categories, the mental disorder must result in an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, sub. A.2.b.

1
2
3
4
5

> claimant can perform all remaining postural motions
> occasionally. The claimant is limited to occasional exposure
> to extreme heat and humidity conditions. The claimant is
> precluded from work involving fast assembly-quota pace
> (e.g., work in an assembly line environment where one's work
> impacts other work down the assembly line). The claimant
> will be off task 3% of the workday due to momentary
> symptom distractions.

6
7
8

AT 23. In crafting this residual functional capacity, the ALJ stated she considered Plaintiff's symptom testimony, the objective medical evidence, other evidence, medical opinions, and prior administrative medical findings. *Id.*

9
10
11
12
13

Based on the residual functional capacity, the ALJ determined at step four that Plaintiff was capable of performing past relevant work as an auditor, sedentary, SVP 8.[3] AT 27. The ALJ noted that this work does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. *Id.* Thus, the ALJ found Plaintiff not disabled during the relevant period. AT 428.

14
15
16

On November 21, 2024, the Appeals Council rejected Plaintiff's appeal. AT 1-5. Plaintiff filed this action requesting judicial review of the Commissioner's final decision, and the parties filed cross-motions for summary judgment. (ECF Nos. 1, 10, 12.)

17

### III.   ISSUES PRESENTED FOR REVIEW

18
19
20
21

Plaintiff contends the ALJ erred by failing to:  (A) include a sitting limitation in the residual functional capacity; and (B) provide clear and convincing reasons to discount Plaintiff's symptom testimony. Plaintiff seeks a remand for further proceedings. (ECF Nos. 10. 13.)

22
23
24

The Commissioner argues the ALJ:  (A) reasonably determined that Plaintiff's residual functional capacity did not include any sitting limitations; and (B) properly assessed Plaintiff's symptom testimony. (ECF No. 12.) Thus, the Commissioner

25
26
27
28

---

3   "Sedentary" in the ALJ's step-five determination references sedentary work, as defined by 20 C.F.R. § 404.1567(a).

   "SVP" is "specific vocational preparation," defined as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* DOT, App. C, § II, available at 1991 WL 688702.

1    contends the decision as a whole is supported by substantial evidence and should be

2    affirmed. *Id.*

3    **IV.    DISCUSSION**

4              **A.    Residual Functional Capacity Formation**

5                      1.    Legal Standards

6          A claimant's residual functional capacity assessment is a determination of what

7    the claimant can still do despite his or her physical, mental and other limitations.

8    20 C.F.R. § 404.1545(a). The residual functional capacity is the "maximum degree to

9    which the individual retains the capacity for sustained performance of the physical-

10   mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). In

11   determining a claimant's residual functional capacity, an ALJ must assess all the

12   evidence (including the descriptions of limitation, and medical reports) to determine what

13   capacity the claimant has for work despite the impairment(s). 20 C.F.R. § 404.1545(a);

14   *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (a residual

15   functional capacity that "fails to take into account a claimant's limitations is defective").

16   Therefore, an ALJ errs when he provides an incomplete residual functional capacity

17   ignoring "significant and probative evidence." *Hill v. Astrue*, 698 F.3d 1153, 1161-62 (9th

18   Cir. 2012).

19         The residual functional capacity does not need to directly correspond to a specific

20   medical opinion; rather, "the ALJ is responsible for translating and incorporating clinical

21   findings into a succinct [residual functional capacity]." *Rounds v. Comm'r of Soc. Sec.*

22   *Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). ALJs are capable of independently

23   reviewing and forming conclusions about medical evidence to determine whether a

24   claimant is disabled and cannot work, as required by statute. *Farlow v. Kijakazi*, 53 F.4th

25   485, 488 (9th Cir. 2022). The ALJ's residual functional capacity assessment should be

26   affirmed if the ALJ has applied the proper legal standard and the decision is supported

27   by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.

28   2005).

1                    2.    Analysis

2          Plaintiff argues that the ALJ improperly excluded a sitting limitation of 6 hours in

3    an 8-hour day in the residual functional capacity. Pl. MSJ at 5-7. Plaintiff also argues the

4    ALJ failed to present this limitation to the vocational expert. *Id.* at 7. Defendant argues

5    that no medical records suggest that Plaintiff had any sitting limitations and that Plaintiff

6    misinterprets the definitions of "light" and "medium" work. Def. MSJ at 3. Defendant also

7    argues that the medical findings match the agency's requirements for sedentary work,

8    and that light work generally includes less sitting than sedentary work. *Id.* at 4.

9          The ALJ found Plaintiff capable of performing light work with some limitations.

10   *See* AT 23. The ALJ also found Plaintiff capable of performing past relevant work as an

11   auditor, which requires sedentary work. AT 27. The ALJ acknowledged that Plaintiff

12   described varying job tasks, but also noted that the vocational expert specifically

13   indicated that this position is not a composite job. AT 27. In weighing the evidence, the

14   ALJ found the opinions of state agency consultants H. Jone, M.D. and E. Trias, M.D.

15   persuasive to the extent they show the claimant is capable of modified light work. AT 25.

16   Both doctors found that Plaintiff can lift and carry 25 pounds frequently and occasionally.

17   AT 80, 98-99. Plaintiff can stand and/or walk with normal breaks for a total of about 6

18   hours in an 8-hour workday. AT 80, 99. He can sit with normal breaks for a total of about

19   6 hours in an 8-hour workday. AT 81, 99. He can occasionally climb and crawl, and

20   frequently balance, stoop, kneel, and crouch. AT 81-82, 99-100. The ALJ found these

21   findings supported by examining physician Dr. Ali's observations and the State agency's

22   evaluation of the record, and also found it consistent with treatment reports and objective

23   evidence. AT 25.

24          In the residual functional capacity, the ALJ did not include an express sitting

25   limitation and failed to provide a reason for not doing so. Defendant argues that Plaintiff

26   ignores the portion of Social Security Rule 83-10 that explains that "sitting should

27   generally total approximately 6 hours of an 8-hour workday." Def. MSJ at 5. Defendant

28   further argues that Plaintiff fails to show how Dr. Jone's and Dr. Trias's findings conflict

with the ALJ's residual functional capacity assessment. Def. MSJ at 5. Under Social

Security regulations, "sedentary job" is "defined as one which involves sitting," however,

"a certain amount of walking and standing is often necessary in carrying out job duties.

Jobs are sedentary if walking and standing are required occasionally and other

sedentary criteria are met." 20 C.F.R. § 404.1567(a). "Occasionally" means "occurring

from very little up to one-third of the time," and "sitting should generally total

approximately 6 hours of an 8-hour day." SSR 83019, 1983 WL 31251, at *5 (Jan. 1,

1983). A job is included in the "light work" category if "it requires a good deal of walking

or standing, or when it involves sitting most of the time with some pushing and pulling of

arm or leg controls." *Id.* § 404.1567(b). If someone can do light work, he or she can also

do sedentary work. *Id.*

      Here, the Court disagrees that Plaintiff has misinterpreted the definitions of

sedentary and light work. The Ninth Circuit has interpreted sedentary work to require

between 6 and 8 hours of sitting. *See Vertigan v. Halter*, 260 F.3d 1044, 1052 (9th Cir.

2001) ("In a work environment requiring sedentary work, the Social Security Rules

require necessary sitting as the ability to do such for six to eight hours a day."). "[T]o be

physically able to work the full range of sedentary jobs, the worker must be able to sit

through most or all of an eight hour day." *Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir.

1999). Plaintiff asserts that the DOT description of auditor does not suggest at least two

hours of standing and walking would be permitted or required. Pl. MSJ at 7. Plaintiff also

states that the ALJ did not present any sitting limitation to the vocational expert. *Id.* The

Court agrees. Because the ALJ did not ask the vocational expert to consider a

hypothetical with the explicit 6-hour sitting limitation, there is no evidence that the sitting

requirements for an auditor do not exceed 6 hours per day. *See Robert William L. v.

Saul*, 2021 WL 1890795, at *6 (C.D. Cal. May 10, 2021). Accordingly, the Court finds

that the ALJ's failure to either include a sitting limitation in the residual functional

capacity and incorporate it into the hypothetical posed to the vocational expert, or failure

to reject the 6-hour sitting limitation and explain why, was not harmless error. *See*

8

1  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *Enrique R. v. Kijakazi*, 2023
2  WL 11950310, at *2-3 (C.D. Cal. Mar. 20, 2023); *Lepeltak v. Kijakazi*, 2022 WL 2954091,
3  at *4 (E.D. Cal. July 26, 2022).

4      **B.**    **Subjective Symptom Testimony**

5      Plaintiff argues the ALJ erred by improperly analyzing Plaintiff's subjective
6  symptom testimony. *See* Pl. MSJ at 7-14 (ECF No. 10).

7          1.   Legal Standards

8      A claimant's statements of subjective symptoms alone are insufficient grounds to
9  establish disability. 20 C.F.R §§ 404.1529(a), 416.929(a). If an ALJ was required to
10  believe every allegation of pain or impairment, disability benefits would run afoul of the
11  Social Security Act and its purpose. *Treichler v. Comm'r,* 775 F.3d 1090, 1106 (9th Cir.
12  2014). In evaluating the extent to which an ALJ must credit the claimant's report of their
13  symptoms, the Ninth Circuit has stated:

14          First, the ALJ must determine whether the claimant has presented
15  objective medical evidence of an underlying impairment which could
  reasonably be expected to produce the pain or other symptoms
16  alleged. In this analysis, the claimant is not required to show that her
  impairment could reasonably be expected to cause the severity of the
17  symptom she has alleged; she need only show that it could
  reasonably have caused some degree of the symptom. Nor must a
18  claimant produce objective medical evidence of the pain or fatigue
  itself, or the severity thereof.

19          If the claimant satisfies the first step of this analysis, and there is no
20  evidence of malingering, the ALJ can reject the claimant's testimony
  about the severity of her symptoms only by offering specific, clear and
21  convincing reasons for doing so. This is not an easy requirement to
  meet: The clear and convincing standard is the most demanding
22  required in Social Security cases.

23  *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (quotations omitted). The ALJ's
24  reasons for discounting or rejecting a claimant's subjective symptom testimony must be
25  sufficiently specific to allow a reviewing court to conclude the adjudicator did not
26  arbitrarily discredit a claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493
27  (9th Cir. 2015) (quotations omitted). Examples of "specific, clear and convincing
28  reasons" for discounting or rejecting a claimant's subjective symptom testimony include:

9

1   prescription of conservative treatment, *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir.

2   2007); inconsistencies between the plaintiff's testimony and conduct (including daily

3   activities), *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005); whether the alleged

4   symptoms are consistent with the medical evidence of record, *Rollins v. Massanari*, 261

5   F.3d 853, 857 (9th Cir. 2001); an unexplained or inadequately explained failure to follow

6   a prescribed course of treatment, *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991);

7   or prior inconsistent statements by the plaintiff, *Fair v. Bowen*, 885 F.2d 597, 604 n.5

8   (9th Cir. 1989). A lack of corroborating, objective medical evidence alone is insufficient

9   grounds for an ALJ to discount subjective symptoms; however, it is a factor the ALJ may

10  consider. *Rollins*, 261 F.3d at 857 (citing 20 C.F.R § 404.1529(c)(2)).

11                        2.      Symptom Testimony re: Physical Impairments[4]

12          Regarding Plaintiff's statements that he had disabling physical pain such that he

13  could not work, the ALJ began by summarizing Plaintiff's statements from his disability

14  report and at the 2024 hearing. AT 23. In Plaintiff's January 2022 questionnaire, Plaintiff

15  stated that he lives alone in a house. AT 221. Plaintiff stated that he has lower back pain

16  if he sits more than 30 to 45 minutes and left hip pain if he stands, walks, or sits too long.

17  *Id.* Plaintiff has pain in his hip and lower back if he stands longer than 5 minutes. *Id.*

18  Plaintiff states that he can lift 20 pounds, and carries a clothes basket that weighs about

19  10 pounds. AT 222. Plaintiff does grocery shopping online, vacuums every other month,

20  and does laundry two times a month. *Id.* Plaintiff states that he does not drive because

21  his car is not working, and he has a landscaper for yard work. *Id.* Plaintiff has difficulty

22  finishing housework because he cannot stand or walk for a long time without pain in his

23  hip and back. AT 223. Plaintiff said he was taking pain pills for his back but stopped in

24  April 2021 because he did not want to get addicted. *Id.* Plaintiff stated he did not use an

25  assistive device. *Id.*

26

27  ---

    [4]  While Plaintiff alleges mental impairments and the ALJ discusses these impairments,
    Plaintiff does not present arguments regarding Plaintiff's mental impairments. *See* Pl.
28  MSJ. Accordingly, the Court will limit its analysis to Plaintiff's physical impairments.

At the hearing, Plaintiff testified that he worked from July 21, 2022 until November 14, 2022 for Retail Execution West where he set up displays at stores such as Walmart. AT 41. Plaintiff left this position because the work required him to bend over and he was unable to do this. *See* AT 42. Plaintiff then was hired to work at an Amazon Fulfillment Center on November 12, 2022 and worked until March 1, 2023. AT 39-40. Plaintiff sorted packages and lifted a maximum of 10 pounds. AT 40. Plaintiff stated that he left this position because of his left hip. *Id.* Plaintiff testified that he applied for the Amazon job before leaving the Retail Execution West job, but picked the job at Amazon because he "was literally just pivoting." AT 42. Plaintiff discussed a prior job where he spent 30 years with Chevron as an auditor. AT 44. Plaintiff testified that he spent 50 percent of his time in his office and the other 50 percent in the field. *Id.* Doing this job, Plaintiff would lift up to 40 pounds of paperwork. AT 46.

Plaintiff testified that he had x-rays of his right hip and physical therapy for both hips. AT 47. Plaintiff testified that he takes ibuprofen and Meloxicam for arthritis, but has had no other treatment for his hips. AT 48. Plaintiff took a pain pill for about six months but stopped because it "knocks [him] out." *Id.* But when questioned by his attorney, Plaintiff stated that he was taking prescription pain medication since April 2020. AT 51. Plaintiff states he has not received treatment for his back. AT 49.

Plaintiff testified that he can stand for 10 minutes at a time before needing a break, and can be on his feet for no more than two hours. AT 50. Plaintiff testified that lifting five pounds is painful. AT 51. Plaintiff stated that he has used a cane since 2023, and uses it a few times a day in the house and if he goes outside. *See* AT 51, 52. Plaintiff also testified that he has problems with anxiety related to being unable to focus while at work. AT 54. Plaintiff stated he does his shopping online. AT 55. Plaintiff further testified that the act of sitting down and standing up is extremely painful so he tries not to sit a lot. AT 56. Plaintiff used to play basketball and used to drive, but testified that getting in and out of the car is painful. AT 56. Plaintiff stated that he does "pretty much no housework." AT 56-57.

11

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AT 23-24. The ALJ relied on the objective medical evidence, Plaintiff's treatment history, and Plaintiff's daily activities to support this conclusion. AT 24-25. Because the ALJ found Plaintiff's medically determinable impairments could reasonably cause the alleged symptoms, the ALJ must provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony about the severity of his symptoms. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015).

a.    *Objective Medical Evidence*

The first reason the ALJ considered for finding Plaintiff's testimony "not entirely consistent" with the evidence in the record is that the ALJ found Plaintiff's allegations inconsistent with treatment reports and objective evidence. AT 24. Defendant argues that the ALJ reasonably found the objective medical evidence of Plaintiff's physical impairments contradicted the extent of his allegations. Def. MSJ at 8 (ECF No. 12).

The Court finds that the ALJ properly found Plaintiff's subjective symptom testimony inconsistent with the objective medical evidence. *See* AT 24-25. The ALJ noted that records from April 2020 reflected a recent back injury. AT 24, 276. In May 2020, medical records reflected that Plaintiff had significant pain with prolonged sitting and standing, but that symptoms were getting a little better. AT 270. Plaintiff was prescribed Cyclobenzaprine for muscle spasms. AT 269.

In January 2022, Plaintiff presented to treating physicians for a physical examination. AT 302-04. Plaintiff stated that his blood pressure had been a little high recently and complained of some left ear pain, but otherwise was doing well. AT 303. Plaintiff appeared alert and was in no distress. AT 304. Plaintiff had normal extremity findings, normal psychiatric findings, and normal appearance. *Id.*

In February 2022, Plaintiff was examined by psychologist Ona Stiles, Ph.D. AT

12

283. Plaintiff reported having anxiety, poor sleep, and stress. *Id.* Dr. Stiles reported that Plaintiff has some difficulties with shopping, self-care, or independent living, but is independent for basic activities of daily living and does not need help with preparing simple meals or doing light household chores. AT 286. Plaintiff stated that he does not bathe much because it is hard to bend or stand too long. *Id.* A mental status examination revealed an euthymic and anxious mood, congruent affect, intact thought process, cooperative attitude, alert, fully oriented, intact intelligence, fair to good attention, fair to good concentration, and fair memory. AT 286.

In March 2022, Plaintiff was examined by Shahid Ali, M.D. AT 290. He reported complaints of upper back spasm, low back pain, and left hip pain. *Id.* Plaintiff also reported taking a muscle relaxer in early 2021, but stopped due to side effects. *Id.* Plaintiff reported doing vacuuming, dishes, cooking, washing clothes, and taking care of his basic hygiene without assistance. AT 291. Plaintiff was able to walk into the exam room without assistance and was sitting comfortably. *Id.* He could get on and off the exam table, take his shoes off and on, both without difficulty. *Id.* Plaintiff did not use an assistive device. *Id.* Dr. Ali found Plaintiff to be obese, with a slight limping gait and discomfort in his left hip range of motion. AT 292. Plaintiff had some tenderness on the right SI joint, and had normal motor strength, muscle bulk and tone. *Id.*

In November 2022, treating physicians reported Plaintiff's complaints of low back pain and left hip joint pain. AT 398. An examination revealed limited range of motion in the left hip and lumbar, with pain noted during the examination. AT 400. An x-ray was ordered to rule out hip degenerative joint disease. AT 398. In December 2022, an x-ray was taken of Plaintiff's left hip, which revealed severe degeneration and severe arthritis. AT 427-28.

In April 2023, treating physician reports showed complaints of severe left hip degenerative joint disease and significant pain with walking, and an inability to work. AT 494. Plaintiff was referred to physical therapy and discussed the option of a hip joint injection. *Id.* Plaintiff presented to virtual physical therapy. AT 506-07. Plaintiff reported

1   that his left hip was feeling better overall, with the greatest improvement being his

2   mobility. AT 512. Plaintiff's symptoms were reported to be improving. AT 513.

3        In May 2023, Plaintiff reported during physical therapy that his hip continues to

4   feel better and has more mobility, but he also feels like there are certain movements,

5   such as getting in and out of the car, raising his leg in the air or walking, that cause

6   significant pain. AT 515-16. Plaintiff stated that the physical therapy was "definitely

7   helping," but still reported having pain levels of 7 to 8 out of 10 in both hips. AT 520-21.

8        In June 2023, Plaintiff reported that his hip mobility and strength continue to

9   improve, and was able to get down on his knee to pick something up, and was able to

10  get back up on his own. AT 525.

11       The ALJ properly found that the "record partially substantiated pain complaints;

12  however, evidence failed to establish disabling symptoms and limitations." AT 24-25.

13  This evidence of normal or mild impairments conflicts with Plaintiff's statements about

14  his disabling symptoms, including that he is unable to sit more than 30 to 45 minutes or

15  stand longer than 5 minutes. AT 221. Further, Plaintiff testified that he used a cane in

16  2023 (AT 51, 52), but this conflicts with Plaintiff's own statements in his functional report

17  that he did not use an assistive device (AT 223), and with medical evidence that he did

18  not use an assistive device (AT 291). The ALJ could consider the objective medical

19  evidence in resolving conflicts in Plaintiff's testimony, and did not err in finding Plaintiff's

20  own stated extreme limitations contradicted by the medical findings in the record. *See*

21  *Rollins*, 261 F.3d at 857; *see also Marshall v. Saul*, 830 F. App'x 179, 181 (9th Cir. 2020)

22  (finding clear and convincing reasons to reject the plaintiff's symptom testimony where

23  there was a "disjunction between his statements that [he] could not walk and medical

24  evidence showing that his gait was normal"). The ALJ properly connected this evidence

25  to her conclusions and was not required to re-summarize this evidence in the paragraph

26  where she stated her conclusions on Plaintiff's symptom testimony. *See Treichler*, 775

27  F.3d at 1099 (reminding that courts should not reverse if "the agency's path may

28  reasonably be discerned," even if explained with "less-than-ideal clarity").

14

1    The ALJ also noted that the medical records reflected gaps in treatment. AT 25. In

2    the ALJ's review of the objective medical evidence, the ALJ notes medical records

3    beginning in April 2020, records from May 2020, and then notes the next record from

4    January 2022. AT 24. This is over a year and a half gap in treatment. Plaintiff does not

5    argue that the ALJ failed to analyze certain medical records, and a review of the record

6    indicates that there were no substantive medical records from that time. Gaps in medical

7    treatment is a clear and convincing reason for discounting a plaintiff's subjective

8    testimony. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 n.2 (9th Cir. 2015); *Burch v.*

9    *Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see also Livier V. v. Berryhill*, 2019 WL

10    1382892, at *8 (C.D. Cal. Mar. 27, 2019) (finding a greater than 15 month gap in

11    treatment was a proper reason to discount plaintiff's symptom testimony). Accordingly,

12    the ALJ properly relied on gaps in Plaintiff's treatment to discount Plaintiff's testimony.

13                    *b.      Conservative Treatment*

14    The ALJ also discounted Plaintiff's testimony because it was inconsistent with

15    treatment history. AT 25. The ALJ found that records reflected "limited, conservative care

16    for physical impairments," and noted that "[o]ne would expect frequent, aggressive care

17    given allegations of disability." *Id.* Evidence of conservative treatment is a sufficient

18    reason to discount a Plaintiff's testimony regarding the severity of an impairment. *Smartt*

19    *v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022). Here, the ALJ noted that records reflected

20    that Plaintiff was treated with medication in May 2020, Plaintiff attended physical therapy

21    beginning in April 2023, and physicians discussed injections with Plaintiff. AT 24. The

22    record indicates that Plaintiff was prescribed a muscle relaxer and was treated with

23    ibuprofen for his pain (AT 48, 290), and that his physician discussed injections for his hip

24    but ultimately determined that steroid injections for the hip joint are not helpful for a long

25    enough period for hip arthritis and are not recommended. (AT 490, 494). Plaintiff argues

26    that because a "more aggressive treatment of injections" was discussed but eliminated

27    as unavailable, the finding of conservative treatment as inconsistent with Plaintiff's

28    subjective testimony is inappropriate. Pl. MSJ at 13. However, courts consider treatment

15

1    with over-the-counter pain medication, physical therapy, and even injections to be

2    conservative treatment. *See Hanes v. Colvin*, 651 F. App'x 703, 705 (9th Cir. 2016);

3    *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). The record does not reflect that

4    Plaintiff received more aggressive treatment, and even if injections were not proper for

5    him, this treatment is considered conservative. Accordingly, the Court finds that the ALJ

6    properly relied on Plaintiff's conservative treatment to discount his testimony.

7                              c.      *Daily Activities*

8            The ALJ discounted Plaintiff's allegations as being inconsistent with daily

9    activities. AT 25. Plaintiff argues that his work activity supports his statements that he

10   lacks the ability for sustained prolonged weightbearing, sitting, and postural activities. Pl.

11   MSJ at 13-14.

12           An ALJ may properly rely on inconsistencies between a plaintiff's testimony and

13   the plaintiff's reported daily activities as a basis for an adverse credibility determination.

14   *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). However, an ALJ must

15   "elaborate on which daily activities conflicted with which part of [a plaintiff's] testimony."

16   *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (emphasis omitted). An ALJ may

17   also consider whether the daily activities meet the threshold for transferable work skills.

18   *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 681

19   (9th Cir. 2005) ("[I]f a claimant engages in numerous daily activities involving skills that

20   could be transferred to the workplace, the ALJ may discredit the claimant's allegations

21   upon making specific findings relating to those activities.").

22           Here, the ALJ first noted that the record reflected extensive work activity during

23   the period at issue, including earnings at substantial gainful activity levels in 2022 and

24   2023, which the ALJ found inconsistent with allegations of ongoing, disabling symptoms

25   and limitations. AT 25. The record indicates Plaintiff received income from Retail

26   Execution West LLC during the third and fourth quarters of 2022; and income from

27   Amazon Com Services Inc. during the fourth quarter of 2022 and during the first and

28   second quarters of 2023. AT 204. Further, Plaintiff testified that he worked at Retail

1  Execution West setting up displays from July 21, 2022 until November 14, 2022, and at

2  the Amazon Fulfillment Center sorting packages from November 12, 2022 until he left on

3  March 1, 2023. AT 39-40, 41. The ALJ may properly consider Plaintiff's recent work

4  history as a reason to discount Plaintiff's symptom testimony. *See Bray v. Comm'r of*

5  *Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).

6         The ALJ also noted that Plaintiff's activities of daily living are inconsistent with

7  allegations of disability. AT 25. The ALJ noted that Plaintiff admitted he lived alone,

8  could lift up to 20 pounds, completed household chores, prepared meals, performed

9  personal hygiene tasks, and washed laundry. AT 25, 291. Further, the ALJ noted that in

10  a February 2022 examination, psychologist Ona Stiles, Ph.D. reported that Plaintiff

11  reported some difficulties with shopping, self-care, or independent living, but is

12  independent for basic activities of daily living and does not need help with preparing

13  simple meals or doing light household chores. AT 286. Contradictions between Plaintiff's

14  symptom testimony and his actual activities of daily living is a permissible reason to

15  discount Plaintiff's severely limiting symptom statements. *See Burch*, 400 F.3d at 680-81

16  (finding symptom statements contradicted by the plaintiff's ability to care for her personal

17  needs, cook, clean and shop, interact with family and boyfriend, and noting that though

18  these daily activities "may also admit of an interpretation more favorable to [the plaintiff],

19  the ALJ's interpretation was rational" and must be upheld where susceptible to more

20  than one rational interpretation).

21         Finally, the ALJ did not wholly discount Plaintiff's symptom statements. The ALJ

22  did not deem Plaintiff able to perform any job in the national economy. Instead, the ALJ

23  found that Plaintiff was limited to light work, with many additional physical limitations

24  included in his residual functional capacity. AT 23. Under the regulations, Plaintiff's

25  statements of subjective symptoms alone are insufficient grounds to establish disability.

26  20 C.F.R §§ 404.1529(a). The Court finds the ALJ provided sufficiently specific reasons

27  for discounting the more severe aspects of Plaintiff's symptom testimony regarding his

28  physical impairments, such that the Court does not find Plaintiff's testimony was

1  arbitrarily discredited. *See Brown-Hunter*, 806 F.3d at 493.

2  **V.    CONCLUSION**

3        With error established, the court has the discretion to remand or reverse and

4  award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). A case may be

5  remanded under the "credit-as-true" rule for an award of benefits where:

6          (1) the record has been fully developed and further administrative
        proceedings would serve no useful purpose; (2) the ALJ has failed to

7          provide legally sufficient reasons for rejecting evidence, whether claimant
        testimony or medical opinion; and (3) if the improperly discredited evidence

8          were credited as true, the ALJ would be required to find the claimant
        disabled on remand.

9

10  *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for

11  the "credit-as-true" rule are met, the court retains "flexibility to remand for further

12  proceedings when the record as a whole creates serious doubt as to whether the

13  claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021;

14  *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district

15  court concludes that further administrative proceedings would serve no useful purpose, it

16  may not remand with a direction to provide benefits."); *Treichler v. Comm'r of Soc. Sec.*

17  *Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but

18  the record is uncertain and ambiguous, the proper approach is to remand the case to the

19  agency.").

20        Here, the record as a whole creates serious doubt as to whether Plaintiff was, in

21  fact, disabled during the relevant period. On remand, the ALJ is free to develop the

22  record as needed, but must sufficiently analyze whether Plaintiff's residual functional

23  capacity should include a limitation on sitting and how that sitting limitation affects

24  Plaintiff's ability to perform past work. The Court expresses no opinion regarding how the

25  evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved,

26  on remand. The Court also does not instruct the ALJ to credit any particular opinion or

27  testimony. The ALJ may ultimately find Plaintiff disabled during the entirety of the

28  relevant period; may find Plaintiff eligible for some type of closed period of disability

benefits; or may find that Plaintiff was never disabled during the relevant period, provided that the ALJ's determination complies with applicable legal standards and is supported by the record as a whole.

## **ORDER**

Accordingly, the Court ORDERS:

1.    Plaintiff's motion for summary judgment (ECF No. 10) is GRANTED;

2.    The Commissioner's cross-motion (ECF No. 12) is DENIED;

3.    The Clerk of the Count enter judgment for Plaintiff; and

4.    The matter be remanded for further administrative proceedings consistent with this order.

Dated:  October 17, 2025

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

5, burt.0031.25